### SKINNER *et al. vs.* MOYE, trustee.

1. Ordinarily, where there are liens upon property sold, or defects in the title, known to the purchaser, a general warranty will not cover them unless intended so to do; but whether such known defects or liens are intended so to be covered is a question of fact, and parol evidence is admissible to establish such fact, although the evidence for that purpose involves conversations or declarations prior to the making of the deed.

2. Upon the sale of a homestead by consent of the ordinary (prior to

the act of 1876 changing the mode of sale), where the proceeds were used for the family, the purchaser acquired an equity, and a debt for which the homestead could not be sold in the hands of the family could not subject it in the hands of a purchaser. Moreover, while the homestead existed and was held by the family, the reversionary interest of the person from whose property it was set apart was not subject to levy and sale. But when the entire fee, including both the homestead estate and the reversion, was sold (the ordinary consenting as to the homestead), the reversionary interest was not protected in the hands of the purchaser, and could be levied on and sold.

(*a.*) If the husband warranted his purchaser against the claim of certain creditors, and under such claim the reversionary interest was sold, and the purchaser of the land bought it to protect himself, he could hold his warrantor liable, or could set off the amount so paid against a suit for the balance of the purchase money.

(*b.*) The interest of the wife, if she contributed to the payment for the land when bought by her husband, is a matter between her and her husband, there being nothing to show notice to the purchaser.

December 19, 1882.

Mortgage. Homestead. Evidence. Deeds. Warranty. Levy and Sale. Before Judge SIMMONS. Washington Superior Court. February Adjourned Term, 1882.

Reported in the decision.

W. W. MONTGOMERY, for plaintiffs in error.

B. D. EVANS; JNO. N. GILMORE; H. D. D. TWIGGS, for defendant.

SPEER, Justice.

The plaintiffs in error made their application to foreclose a mortgage on certain lands of the defendant, to recover the amount due on a note secured by the mortgage, made by the defendant in error, payable to the plaintiffs, for the sum of eight hundred and thirty dollars principal, besides interest, and which was given as the last

v 69—31

Skinner *et al. vs.* Moye, trustee.

payment due on the land mortgaged, and which land had been sold by the plaintiffs to the defendant.  To this petition to foreclose the defendant filed his plea, alleging that the note on which the foreclosure is sought was the balance due for the purchase money of the land mortgaged, and that the deed given by the plaintiffs to defendant had therein a covenant of warranty, which warranty had failed, and defendant was compelled to pay out eleven hundred dollars to perfect and protect said title, and this sum plaintiffs should allow defendant, and the mortgage for this cause should not be enforced against him.

Under the evidence and charge of the court, the jury returned a verdict in favor of the defendant.  A motion for new trial was made, which was refused, and plaintiffs excepted.

The evidence discloses the following statement of facts : That the land mortgaged was purchased by Jesse J. Skinner at a sale made by the administrator of —— Brown, deceased, who was the father of Mrs. Skinner, said sale taking place since the year 1866 ; that as part payment for said land, the distributive share of Mrs. Skinner, as one of the heirs at law of the intestate, was appropriated, amounting to about the sum of eight hundred dollars, the same being her separate estate; that after said purchase and payment for said land, Jesse J. Skinner, as the head of a family, had laid off to him a homestead in realty for the benefit of his wife and family in the land so purchased, subject to the dower of the widow therein ; that afterwards, Skinner and his wife, being desirous of selling said lands, with and under the approval of the ordinary, sold and conveyed the same to the defendant in error subject to the widow's dower, the body of land containing six hundred and sixty-six acres, for the sum of six thousand three hundred and thirty-dollars.  The conveyance recited, " that the said James J. Skinner had laid off to him, as the head of a family, a homestead in realty for the benefit of his wife, Eliza, and family, con-

Skinner *et al. vs.* Moye, trustee.

taining six hundred and sixty-six acres, and the said Jesse J. Skinner and Eliza, his wife, being desirous to sell and dispose of the same, with and under the approval of the ordinary, did, in and for the consideration, sell and convey the same, etc." The deed was jointly executed by Skinner and wife, and approved by the ordinary, and bore date on the 8th November, 1873.

It further appears that at the time of the execution of said deed, F. W. Sims & Co. held an execution against James J. Skinner for the sum of $8,000.00 principal, dated on 17th January, 1872, issuing upon a judgment rendered on the 5th December, 1871, on a debt contracted since 1868, which was unsatisfied ; that pending the negotiations for the sale of said land by the Skinners to the defendant, this judgment and its lien and effect on the title was discussed between the parties. The testimony on this point was conflicting, Skinner testifying that, on account of a reduction of three hundred dollars in the price, the defendant purchased said land, agreeing to take the risk of the title, while the defendant and another witness testified that Skinner agreed that he would protect the defendant against said judgment, and it could be done, if necessary, by the payments or installments to become due on the land, as he, defendant, would have the same in his hands.

It further appears, after the sale of the land, the note upon which a recovery is now sought, and which was the last installment due, was, on the 12th day of June, 1876, duly assigned in writing by Jesse J. Skinner to his wife, Eliza J. Skinner, with the mortgage, in consideration of her separate interest in said land arising from the payment of her distributive share in her father's estate, applied to the purchase thereof at the administrator's sale.

On the 10th day of January, 1877, F. W. Sims & Co. caused their *fi. fa.* against Jesse J. Skinner to be levied "on the reversionary interest of the defendant in *fi. fa.* after the termination of the homestead estate (with the exception of the widow's dower) on the land " purchased

Skinner *et al. vs.* Moye, trustee.

by the defendant below, the same was sold and purchased at sheriff's sale at the price of eight hundred dollars, the vendee, Moye, interposing no claim to said property or any objection to the sale. For this amount paid out by him, as he alleges, to protect the title he had purchased of plaintiffs, he sets it up as a bar to the recovery on the foreclosure sought, and claims that there has been a breach of the covenant of warrantee made by the plaintiffs in their sale of the land to the defendant, and for this cause plaintiffs are not entitled to recover.

1. Whatever interest Mrs. Skinner may have had in this land by having contributed to its payment out of her separate property, is a matter alone between herself and her husband. There is nothing in the record that shows that the defendant, Moye, had any notice that she had any interest in it. The deed from the administrator was made to her husband alone, and as his property he exempted it by a homestead estate. His wife joined him in the conveyance to Moye, and this estops her from asserting any title or interest in the land as her separate property under the facts proved.

Was it competent, over objection, to prove by Moye and Graybill the facts testified to by them as to what Skinner said about protecting Moye from the Sims *fi. fa.*, on the ground that all declarations antecedent to the deed and the whole prior negotiations are merged in the written conveyance, and that parol evidence was not admissible to vary the contract between the parties? The rule is, that where there are liens upon or any defect in the title, *known* to the party purchasing, a general unanimity is not presumed to cover such defects, unless expressly so intended. But whether such known defects or liens are intended so to be covered, is a question of fact, and parol evidence is admissible to establish such fact. Code, 2655.

Here the plaintiffs in error insisted that as the defendant, at and before the purchase, knew of the existence of the Sims *fi. fa.* and its lien upon the property of Skinner,

Skinner *et al. vs* Moye, trustee.

that the general covenant of warranty in the deed they made to Moye was not intended to cover this lien upon or defect in the title. But whether it was so intended was a question of proof, and parol evidence was properly admitted to establish it. We see, therefore, no error in admitting the testimony of Moye and Graybill on this ground, as complained of.

2. The main question in the case is, whether the sale of the reversionary interest in this land was such a breach of the covenant of warranty in plaintiffs deed as entitles the defendant below to an abatement of the price agreed to be paid for the land, and whether the cost and expense incurred by defendant in purchasing such reversionary interest can be pleaded to this suit for the purchase money.

This land was the property of Jesse J. Skinner. Out of it he had procured to be set apart a homestead estate that protected both the homestead and reversionary interest from levy and sale under the Sims *fi. fa.* so long as the beneficiaries of such estate were in the enjoyment of and entitled to the homestead property. It has been held upon the sale of the homestead estate by consent of the ordinary, where the proceeds are used for the family, the purchaser acquires an equity, and if the debt be such as could not sell it in the hands of the family, it cannot sell it in the hands of those whose money has been used by the family. 60 *Ga.*, 624. Moreover, it was ruled in the case of *Jolly vs. Lofton*, 61 *Ga.*, 154, that pending the existence of the homestead, the reversionary interest of the person from whose property it was set apart is not subject to sale. See also 47 *Ga.*, 629; 59 *Ga.*, 836. But the question presented by this record is, where a homestead estate, and likewise the reversion, has been aliened (by the consent of the ordinary, so far as the homestead estate is concerned), whether the reversionary interest of the husband in said property is subject to be sold in the hands of the vendee under a lien existing against the husband at the time of the alienation.

Skinner *et al. vs.* Moye, trustee.

That a reversion or remainder estate in realty is the subject of levy and sale ordinarily, cannot be questioned.

When this homestead estate was set apart and approved out of these lands, by the head of the family for their benefit, the residue or reversionary estate was still left in the grantor and his heirs, after the determination of the homestead estate which he had consented should be set apart and granted out of it, and such interest continued, of course, subject to the lien of judgments against the grantor. When this reversionary estate has been sold with the homestead, though the homestead is protected as an equity in the hands of the purchaser against the debts of the vendee, why should not. the reversionary estate thus aliened be subject to the lien and to be disposed of by judicial sale? This court has ruled that the homestead in the hands of a vendee could not be sold where the money arising from the sale has been used for the benefit of the family so long as the homestead estate exists. But here is an estate in these lands that is distinct and independent of the homestead, and all that the vendee could claim would be to be subrogated to the rights of the family of the vendor so far as to protect the *homestead* from levy and sale. We see no good reason in law, where such sale does not interfere with the full enjoyment of the homestead estate in the vendee, why this interest should be exempted. All he bought under the protection and exemption of the homestead was the right to its use and enjoyment pending the homestead estate, and as he also bought the reversionary interest from the vendor, subject to the lien, we see nothing in public policy, or in the spirit or letter of the law of exemption, which should protect (in his hands) this reversionary interest from sale. The exemption of the homestead in his hands as a vendee was a mere equity at most, allowed in view of the peculiar and anomalous character of the homestead estate, and we see no good reason why, when he is protected in the enjoyment of that estate, his equity should extend to the reversionary estate,

which, under the facts, in the future can never inure to the benefit of the wife and children of the original applicant.

There is a good reason why such reversionary interest should be protected from sale when the homestead is in the possession of the family. The policy of the law is to give the family this protection and exemption against certain debts, during the period their condition of dependency demands it, and for them not to be harassed or disturbed in this enjoyment by one holding the reversionary estate, and, moreover, to give the head of the family an opportunity to pay off the debts and incumbrances existing, with a view of eventually protecting the reversion for himself and family if he should be so fortunate. But these reasons no longer obtain, when the head of the family has aliened not only the homestead but likewise the reversionary estate, and we think it the better policy not to exempt these reversionary estates longer and farther than it may be necessary for the use and enjoyment of the family, for whose benefit the homestead was assigned. It would be contrary to the general policy of the law, and might lead as to these estates to inextricable confusion and litigation in the future. As the decision of this question adversely to the plaintiff in error disposes of all the exceptions made to the charge and refusals to charge, our duty is to affirm the judgment of the court below.

Judgment affirmed.